IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| TAMER MAHMOUD, *et al.*,  )<br>  )<br>   Plaintiffs,  )<br>  )<br>   v.  )<br>  )<br> MONIFA B. MCKNIGHT, *in her official*  )<br> *capacity as Superintendent of the Montgomery*  )<br> *County Board of Education*, *et al.*,  )<br>  )<br>   Defendants.  )<br>  ) | Civil Action No. 8:23-cv-01380-DLB |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
BRIEF AND DECLARATION OF GRACE MORRISON**

Defendants respectfully submit this response to Plaintiffs' supplemental brief, Dkt. No. 51 ("Supp. Br."), and Declaration of Grace Morrison, Dkt. No. 52 ("Morrison Decl."), as permitted by the Court's August 14, 2023 paperless order, Dkt. No. 53. Plaintiffs' belated filings do not move the needle; they have not satisfied their burden to establish that they are entitled to the extraordinary remedy of a preliminary injunction. The motion for a preliminary injunction, Dkt. No. 23, should therefore be denied.

**I.    Plaintiffs' Supplemental Brief On Family Life And Human Sexuality Instruction
       Does Not Salvage Their Meritless Argument Under *Tandon***

Plaintiffs will not succeed on the merits of their free exercise claim under *Tandon v. Newsom* because they have presented no evidence that MCPS has "treat[ed] *any* … secular activity more favorably than religious exercise." 141 S. Ct. 1294, 1296 (2021). They cannot, as they must, show that opt outs from family life and human sexuality instruction are secular while opt outs from instruction using the LGBTQ-Inclusive Books are religious. Plaintiffs therefore do not point to the kind of disparate treatment that triggers strict scrutiny under *Tandon*—disparate treatment between "secular activity" and "religious exercise." *See id.*; *see also Roman Catholic*

*Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) ("[T]he regulations cannot be viewed as neutral *because they single out houses of worship* for especially harsh treatment." (emphasis added)).  That alone defeats Plaintiffs' *Tandon* claim.

Even if Plaintiffs' *Tandon* claim could somehow proceed without secular and religious activity to compare, Plaintiffs have not established that opt outs from family life and human sexuality instruction are comparable to opt outs from instruction using the LGBTQ-Inclusive Books.  Plaintiffs argue that MCPS cannot allow opt outs from one but not the other because "both activities advance the same inclusivity and safety interests." Supp. Br. 1.  But Plaintiffs have not shown that the same "asserted government interest that justifies" MCPS's no-opt-out policy from the LGBTQ-Inclusive Books is undermined by allowing opt outs from family life and human sexuality instruction.  *Cf. Tandon*, 141 S. Ct. at 1297 (analyzing whether secular activities permitted by state "pose[d] a lesser risk of transmission" than religious exercise prohibited under COVID restrictions).  The no-opt-out policy for the LGBTQ-Inclusive Books was implemented based on concerns about high student absenteeism, the administrative infeasibility of honoring individual opt-out requests, and exposing students to social stigma and isolation when their classmates are permitted to leave the classroom whenever the books are read.  *See* Hazel Decl. ¶¶ 36-39.  Plaintiffs have put forward no evidence that these interests would be imperiled by the opt outs from family life and human sexuality instruction envisioned by Maryland law.  Plaintiffs—who carry the burden to support their request for preliminary injunctive relief—describe no comparable risks of absenteeism or administrative infeasibility posed by excusing students from family life and human sexuality instruction.  And while family life and human sexuality instruction—which has included opt outs for more than a decade—may have recently been updated to cover issues of sexual orientation, gender identity, intolerance,

stereotypes, and stigmatization, *see* Supp. Br. 1-2, Plaintiffs do not offer any evidence that parents may choose to remove students from class when only those topics are discussed, risking the kind of social stigma and isolation of other students that concerned MCPS in the context of opt outs from the LGBTQ-Inclusive Books.

II.     **The Morrison Declaration Does Not Support Plaintiffs' Free Exercise or Due Process Claims**

Plaintiffs appear to be using the Morrison Declaration to argue that the no-opt-out policy violates the Morrisons' free exercise or due process rights because, due to their child's special needs, the Morrisons cannot contradict instruction from their child's teachers that clashes with the Morrisons' religious views.  *See* Morrison Decl. ¶ 9.  The Morrison Declaration does not support the motion for preliminary injunction because neither the Morrisons (who are not plaintiffs) nor Kids First—the unincorporated association joined as a plaintiff in the First Amended Complaint, Dkt. No. 36, of which Grace Morrison is a board member—has moved for preliminary injunctive relief, *see* Plfs.' Mot. for Prelim. Inj., Dkt. No. 23, at 1.

But even setting that aside, the Morrison Declaration does not support granting injunctive relief for the same reason that the other parent declarations do not:  Parents are not constitutionally entitled to public school instruction that is entirely consistent with their religious beliefs.  "[T]he mere fact that a child is exposed on occasion in public school to a concept offensive to a parent's religious belief does not inhibit the parent from instructing the child differently." *Parker v. Hurley*, 514 F.3d 87, 105 (1st Cir. 2008).  That is still the case even when a public school student has a disability that could make it more difficult for a parent to contravene effectively a teacher's instruction.  The Morrisons state that their child "doesn't understand or differentiate instructions from her teachers and her parents."  Morrison Decl. ¶ 9.  But the Morrisons have not averred that a teacher's instruction will always win out over the

religious teachings that the Morrisons share with their child. Nor would that offend the Constitution. Any child, with or without a learning disability, may come away from public school instruction with a new perspective not easily contravened by their parents. So long as the parents "remain[] free to discuss these matters and to place them in the family's moral or religious context, or to supplement the information with more appropriate materials," the parents' rights have not been violated. *Parker*, 514 F.3d at 105.

Binding precedent makes clear that the Morrisons do not have a viable free exercise claim. The Fourth Circuit has held that parents may be forced to disenroll their children from private religious schools and enroll them in a public school in order to access publicly funded special educational services. *See D.L. ex rel. K.L. v. Baltimore Bd. of Sch. Comm'rs*, 706 F.3d 256, 262 (4th Cir. 2013). In *D.L.*, as here, parents argued that their religious exercise rights were burdened because they were pressured to send their child, who had been diagnosed with ADHD and anxiety, to public school so that their child could receive costly special educational services. *Id.* at 258, 262; *see* Morrison Decl. ¶ 10 (asserting that "[o]nly the public school system has all th[e] resources" their daughter needs). And in *D.L.*, as here, the parents could not prevail under the Free Exercise Clause because "[t]he right to a religious education does not extend to a right to demand that public schools accommodate [parents'] educational preferences" and does not prohibit a practice "merely because it causes economic disadvantage on individuals who choose to practice their religion in a specific manner." *Id.* at 263, 264.

To the extent the Morrisons believe that the education their child is receiving is not compatible with her special educational needs, the appropriate avenue for raising their concerns is through their child's Individualized Educational Program ("IEP"). *See* Morrison Decl. ¶ 3. Parents can request a meeting to review their child's IEP at any time. *See* Special Education,

Common Questions, Montgomery County Public Schools, https://www2.montgomery schoolsmd.org/departments/special-education/common-questions/identification/ (last visited Aug. 15, 2023). The Morrisons do not suggest that they have done so.

Dated: August 15, 2023

Respectfully Submitted,

*/s/ Alan E. Schoenfeld*
Bruce M. Berman (*pro hac vice*)
bruce.berman@wilmerhale.com
Jeremy W. Brinster (*pro hac vice*)
jeremy.brinster@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20037

Alan E. Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
Emily Barnet (*pro hac vice*)
emily.barnet@wilmerhale.com
Cassandra A. Mitchell (*pro hac vice*)
cassie.mitchell@wilmerhale.com
Thomas K. Bredar (MD No. 21635)
thomas.bredar@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 15, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Alan E. Schoenfeld*
Alan E. Schoenfeld
